[No. 35138-9-I.   Division One.   April 8, 1996.]

MICHAEL ROBB, D/B/A MIKIE'S CENTRAL AUTO, *Appellant*, v. LOWELL R. (ROBBIE) KAUFMAN, ET AL., *Respondents.*

*David W. Gossard*, for appellant.

*Bart R. Anderson* and *Bart R. Anderson, P.S.; H. Joel Watkins, Jr.* and *The Watkins Partnership; Joseph C. Brown* and *Montgomery, Purdue, Blankinship & Austin;* and *Danial D. Pharris, Lisa Kokenge,* and *Lasher Holzapfel Sperry & Ebberson, P.L.L.C.,* for respondents.

ELLINGTON, J. — This case requires us to determine the effect of a writ of execution on the debtor's interest in pending litigation. We hold that execution on the lawsuit survives settlement of the suit and gives priority over later assignment of settlement proceeds. We therefore reverse the trial court's refusal to permit garnishment of the settlement proceeds.

On September 9, 1993, Michael Robb obtained a judgment for $25,972 against Lowell Kaufman. On February 9, 1994, Robb procured a writ of execution against Kaufman's personal property. At the time, Kaufman was involved in a superior court lawsuit against Verla Justice, and Robb caused the sheriff to levy upon Kaufman's "right, title and interest" in the lawsuit. Robb filed a notice of this levy and sale with the clerk of the superior court on February 10, 1994; a sheriff's sale of this "right, title and interest" was duly scheduled for March 25, 1994.

After seizing the lawsuit, Robb engaged in settlement negotiations with Kaufman's attorneys. These negotiations led to a tentative agreement which would have allowed Robb and Kaufman's attorneys to recover moneys owed to both from the proceeds of the pending lawsuit.

This agreement was not yet memorialized when the *Kaufman v. Justice* suit settled on or about March 7, 1994. The case was formally dismissed on March 10, 1994. Terms of the settlement included payment by Justice to Kaufman of $175,000. Robb learned of this settlement and dismissal on March 14, 1994, when Kaufman's attorneys responded to his March 9, 1994, draft of a proposed agreement. Kaufman and his attorneys took the position that the settlement with Justice extinguished Robb's levy.

On March 22, 1994, Kaufman assigned all of his interest in the settlement proceeds to Donald Shaw, David Whitney, and his own attorneys (hereinafter the Assignees). On March 24, 1994, the Assignees perfected their assignments by filing UCC-1 financing statements. At the sheriff's sale on March 25th, Robb purchased Kaufman's "right, title and interest" in the then-dismissed *Kaufman v. Justice* suit.

On March 31, 1994, Robb directed a writ of garnishment against Justice. In her answer, Justice acknowledged that Kaufman had assigned his rights to the settlement proceeds, but took no position as to the priority of the assignments relative to Robb's levy and purchase.

On July 6, 1994, Robb served each of the Assignees with an order to show cause why the court should not award Robb priority over the Assignees' interests. In response, the Assignees provided the lower court with written and oral arguments as to why their assignments deserved priority over Robb's levy and purchase.

On August 15, 1994, the court denied Robb's motion for order on writ of garnishment and allowed the contested funds to be disbursed to the Assignees. The reasoning behind this denial is not apparent from the order, but counsel for Shaw represented to this court that the trial court held Robb was not entitled to relief because the Assignees perfected their assignments prior to service of the writ of garnishment. Robb appealed, but did not file a supersedeas bond to stay distribution of the funds. The funds

were disbursed as follows: $75,000 to Kaufman's attorneys, $65,000 to Shaw, and $35,000 to Whitney.

## Mootness

■ A question is moot if the court cannot provide meaningful relief to the parties. *State v. Turner*, 98 Wn.2d 731, 733, 658 P.2d 658 (1983). Respondents argue that this court cannot provide such relief because the disputed funds have been disbursed.

■ RAP 12.8[1] authorizes this court to provide effective relief so long as this court has jurisdiction over the Assignees. *See State v. A.N.W. Seed Corp.*, 116 Wn.2d 39, 44-45, 802 P.2d 1353 (1991). However, Respondents rely on *Maybee v. Machart*, 110 Wn.2d 902, 757 P.2d 967 (1988) for the proposition that the distribution of funds renders the appeal moot. In *Maybee*, the court observed that whether disputed funds were subject to garnishment was a moot issue because the funds had been disbursed and appellant did not appeal the lower court's judgment on writ of garnishment or the court's order to pay. *Maybee*, 110 Wn.2d at 904. Thus, in *Maybee*, the issue was not preserved. Here, Robb's timely appeal has preserved the priority issue for our review. Under RAP 12.8, the court can provide effective relief. Disbursal of the funds does not render this action moot.

## Jurisdiction

■ Assignees also assert that this court lacks jurisdiction, although it is not clear whether they assert a lack of subject matter or of personal jurisdiction. Lack of subject

---

[1]RAP 12.8 provides:

If a party has voluntarily or involuntarily partially or wholly satisfied a trial court decision which is modified by the appellate court, the trial court shall enter orders and authorize the issuance of process appropriate to restore to the party any property taken from that party, the value of the property, or in appropriate circumstances, provide restitution. An interest in property acquired by a purchaser in good faith, under a decision subsequently reversed or modified, shall not be affected by the reversal or modification of that decision.

matter jurisdiction may be raised for the first time on appeal. RAP 2.5(a). The Assignees imply that the lower court lacked subject matter jurisdiction to settle the priority dispute because the garnishment statutes provide jurisdiction over only three parties: garnishee plaintiff, garnishee defendant, and judgment debtor. *See generally Sadler v. Wagner*, 3 Wn. App. 353, 355, 475 P.2d 901 (1970). However, absent an express or implied inconsistency, the civil rules apply to garnishment proceedings. *See Zesbaugh, Inc. v. General Steel Fabricating, Inc.*, 95 Wn.2d 600, 603-04, 627 P.2d 1321 (1981). The rules provide for the liberal joinder of parties whose presence is necessary to settle disputes. *See* CR 19. The Supreme Court has held that third parties may be joined in garnishment proceedings when necessary to protect their rights in property subject to garnishment. *See Zesbaugh*, 95 Wn. 2d at 601 (intervention is proper in a garnishment proceeding). Assignees have provided no explanation as to why their joinder conflicts with the nature of garnishment proceedings. We see no reason to distinguish intervention from joinder where, as here, each of the joined parties was served with an order to show cause and each party presented written and oral arguments before the lower court. Judicial economy clearly favors joinder here. The lower court had subject matter jurisdiction to resolve the priority dispute.

■ The Assignees also argue that even if the lower court initially had subject matter jurisdiction to settle the priority dispute, such jurisdiction was lost when Robb failed to controvert Justice's answer to the writ of garnishment. The garnishment statutes provide that the plaintiff may controvert the garnishee's answer by filing an affidavit within a 20-day period. RCW 6.27.210. If a garnishee's answer does not make an assertion which may be controverted, however, the garnishee is not obligated to file such an affidavit. *See Mahomet v. Hartford Ins. Co.*, 3 Wn. App. 560, 565, 477 P.2d 191 (1970) (garnishee providing no answer); *see also Zesbaugh*, 95 Wn.2d at 602-03 (intervenor has "no reason" to controvert). Here, Justice's response

recognized that Kaufman had assigned his rights to the settlement but did not take any position as to the validity of these assignments or to the merits of Robb's attempted garnishment. Indeed, resolving the issue of whether the assignments had priority over Robb's levy was crucial to determining whether Robb was entitled to relief under the garnishment statutes. We hold that under these circumstances, Robb was not required to controvert Justice's answer, and that subject matter jurisdiction has been preserved for this appeal.

■ In contrast to subject matter jurisdiction, personal jurisdiction cannot be raised for the first time on appeal by a party who has made a general appearance or entered a responsive pleading which did not dispute personal jurisdiction. *In re Parks*, 48 Wn. App. 166, 170, 737 P.2d 1316, *review denied*, 109 Wn.2d 1006 (1987). Here, each Assignee was served with an order to show cause why the assignments should not be subjugated to Robb's interest, and each successfully argued that their assignments deserved priority over Robb's interest. Principles of equity do not permit the Assignees to benefit from their arguments below and escape review of their arguments on appeal.

PRIORITY

■ The major substantive issue raised here is whether Robb's seizure of Kaufman's "right, title, and interest" in a pending lawsuit survives the settlement and dismissal of that suit and, if so, whether the "first-in-time, first-in-right rule" applies so as to afford Robb priority over the Assignees. There does not appear to be any case squarely addressing this question. The legislature has, however, expressly provided for the levy of a claim upon which a suit has been commenced.[2] A levy of execution creates a lien against the property seized. *Casa del Rey v.*

---

[2]RCW 6.17.160 provides, in part:

The sheriff to whom the writ is directed and delivered shall execute the same without delay as follows:

*Hart*, 31 Wn. App. 532, 535, 643 P.2d 900, *review denied*, 98 Wn.2d 1006 (1982). Robb's seizure of Kaufman's "right, title, and interest" in the pending *Kaufman v. Justice* suit therefore created a lien upon it.

The question is whether Robb's lien survived settlement of the suit. In *Jones v. International Land Corp.*, 51 Wn. App. 737, 741, 755 P.2d 184 (1988), this court stated that so long as notice of the lien is given while a suit is pending, a lien for attorney fees extends to the suit's settlement proceeds. We see no basis for a different analysis for an execution lien. Our mandate is to interpret a statute so as to make legislation purposeful and effective. *Nisqually Delta Ass'n v. City of DuPont*, 27 Wn. App. 163, 167, 617 P.2d 446, (1980), *aff'd*, 95 Wn.2d 563, 627 P.2d 956 (1981). If settlement of a lawsuit eliminated a properly filed, preexisting lien on that suit, the legislative intent of RCW 6.17.160(7) would be seriously frustrated; any debtor faced with such a seizure could settle and avoid the lien, thereby essentially creating a preference among creditors. We do not believe that the legislature intended such a result, nor should this court condone the creation of such preferences.[3] We hold that an execution lien properly filed against a debtor's "right, title and interest" in a pending lawsuit is not extinguished by settlement of the suit, and attaches to any interest of the debtor in proceeds of the settlement.

██ ██ Despite knowledge of Robb's lien, Kaufman

----

. . . .

(7) . . . If the property is a claim on which suit has been commenced, a copy of the writ and of the description shall also be filed with the clerk of the court in which the suit is pending.

[3]*Accord Northern State Bank v. Toal*, 69 Wis. 2d 50, 230 N.W.2d 153, 157 (1975) (discussing cases in which property owners were not permitted to avoid creditor claims where the debtor, at the time the lien attached, owned but did not occupy the property and where the debtor subsequently moved onto the property in an attempt to change the status of the property to that of "homestead.").

deliberately attempted to avoid Robb's lien by assigning his rights to the settlement proceeds. This resulted in a conflict between Robb's lien and the Assignees' rights. When resolving such conflicts, Washington generally follows a "first-in-time, first-in-right" rule. *See Jones v. International Land Corp.*, 51 Wn. App. 737, 743, 755 P.2d 184 (1988). When evaluating a priority conflict between secured parties and lienholders, the pertinent times are when the security interest was perfected and when the lienholder gave notice of the lien. Gerald F. Hess, *Priority Conflicts Between Security Interests and Washington Statutory Liens for Services or Materials*, 25 GONZ. L. REV. 453, 480-81 (1990). Robb constructively notified the Assignees of his lien on February 10, 1994, by filing a copy of the writ and notice of levy with the clerk of the superior court as required by RCW 6.17.160(7). The Assignees did not perfect their interests until nearly six weeks later, on March 24, 1994. Therefore, under the "first-in-time, first-in-right" rule, Robb has priority over the Assignees.

However, the Assignees argue that they are entitled to priority because they filed UCC-1 statements the day before the sheriff's sale. The fundamental purpose of these filings is to provide constructive notice to later parties that a secured party has an interest in the described collateral. Donald J. Rapson, *Prefiling UCC-1s: The Proper Procedure for Perfecting Security Interests*, 14 UCC L. J. 211, 216 (1982). But here, Robb was not a later party; he seized the property before Kaufman assigned his interest. Moreover, each of the Assignees had either constructive or actual notice of Robb's lien before the assignments, and long before they filed UCC-1 statements.

Robb's lien on the pending suit survives settlement and has priority over the assignments.[4] The trial court erred in denying Robb's garnishment over the funds before

___

[4]The Assignees rely on *Mickelson v. Williams*, 50 Wn.2d 402, 312 P.2d 656 (1957) for the proposition that they acquired an intervening and superior right to the settlement proceeds. Such reliance is misplaced. Unlike the seized property here, the property at issue in *Mickelson* was capable of manual delivery. *See Mickelson*, 50 Wn.2d at 405-06. The Supreme Court noted that when such

disbursal. Kaufman and the Assignees are jointly and severally liable for Robb's judgment, and we therefore direct the trial court to enter appropriate orders of restitution under RAP 12.8.

## ATTORNEY FEES

Robb requests attorney fees pursuant to RCW 62A.3-515. This statute provides that the court shall award reasonable attorney fees if the holder of a dishonored check seeks action of the court to obtain payment. *See Northwest Motors, Ltd. v. James*, 57 Wn. App. 364, 373-74, 788 P.2d 584 (1990), *aff'd*, 118 Wn.2d 294, 822 P.2d 280 (1992) (awarding $4,440 in fees on appeal for a claim of $3,600). Robb's original judgment resulted from a dishonored check. Robb is therefore entitled to attorney fees on appeal. Because Robb is entitled to payment from the disbursed fund, we direct the trial court to enter an appropriate order enforcing the fee award on remand. Robb is directed to comply with RAP 18.1(d).

██ Verla Justice requests attorney fees pursuant to RCW 6.27.230. This statute mandates that a court shall award reasonable attorney fees to the prevailing party in a garnishment proceeding when the garnishee-defendant's answer is controverted. Robb did not controvert Justice's answer and therefore a fee award is not appropriate. *See Pennsylvania Life Ins. Co. v. Employment Sec. Dep't*, 97 Wn.2d 412, 413, 645 P.2d 693 (1982) (express statutory authority needed for a fee award). Justice was, however, needlessly made a party to this appeal. Justice settled with Kaufman and has no funds belonging to him, having

---

property is permitted to remain in the possession of the debtor, an attachment lien on that property is inferior to any intervening right which may be acquired by a subsequent levy or good faith purchase. *Mickelson*, 50 Wn. 2d at 406. The rationale for such a rule is that a lienholder who fails to take all possible steps necessary to protect his or her interest in the property is not entitled to priority as against an innocent purchaser. The same rationale does not apply here because Robb satisfied all statutory requirements for seizure of the pending suit. *See* RCW 6.17.160(7). In any event, the assignees had either constructive or actual notice of his lien.

paid his assignees in accordance with the trial court's disbursal order. Her participation was unnecessary to this appeal, yet she has been forced to respond. Accordingly, we direct Robb to pay Justice $250 in terms. *See generally* RAP 18.9.

Reversed and remanded for further proceedings consistent with this opinion.

KENNEDY, A.C.J., and AGID, J., concur.

After modification, further reconsideration denied June 25, 1996.

Review denied at 130 Wn.2d 1020 (1996).